### In re SARDY.

(*Supreme Court, General Term, First Department.* June 29, 1892.)

ATTORNEY AND CLIENT—WITHHOLDING MONEY—SUMMARY PROCEEDING.

Where an application to compel an attorney to pay over money received by him in negotiating a loan on certain land fails to show that the attorney acted as such, but that he acted merely as a broker, the application must be denied, and the applicant left to his remedy at law.

Appeal from special term, New York county.

Application of Arthur L. Sardy for an order to compel John Todhunter, an attorney, to pay over money received by him in a professional capacity. From an order continuing motion to compel payment of the said money, Sardy appeals. Affirmed.

The following is the affidavit or petition of said Sardy: "Arthur L. Sardy, being duly sworn, deposes and says that John Todhunter, an attorney of the supreme court of this state, having his office at No. 52 Wall street, was engaged by me some months ago to sell for me certain property I own at Tarrytown, Westchester county, for an agreed commission, upon the total amount for which the property should sell to be paid said Todhunter as soon as such sale was effected; and he is still acting as my representative in this respect. Mr. Todhunter had heretofore obtained for me upon said property a loan of $2,500, secured by a bond and mortgage held by Jane Arbuthnut, and I engaged Mr. Todhunter on the 25th day of January, 1892, in a professional capacity, to obtain for me a further loan of $1,000 upon the same property; and said Jane Arbuthnut agreed to advance such sum, taking a new bond and mortgage of $3,500, and canceling the old mortgage. On the 27th day of January, 1892, I executed such new bond and mortgage, and delivered them to him. He told me that Mrs. Arbuthnut was sick, but that I could have the money in a few days. On February 10th I again called at Mr. Todhunter's office, and was informed by his clerk that Mrs. Arbuthnut was still very ill, and that I could not get the money until next Saturday or Monday. This was on Wednesday. As two weeks had elapsed since I delivered the bond and mortgage, it appeared strange to me that Mrs. Arbuthnut was so ill that she could not sign her check for $1,000, and I went to Elmsford at once, where her agent has his office, and I was informed by him that Mr. Todhunter had been there on the 8th day of February, and that the check for the $1,000 had been given him, and Mr. Todhunter obtained that the check should be made to his order, instead of mine, as the agent desired, upon the statement that I had left the city, and would not return for some time. He told me that Mr. Todhunter had delivered to him the bond and mortgage on the same day. I at once drove to Mr. Todhunter's residence at Tarrytown, and demanded the money, and he admitted to me that he had received $964.14, and had deposited the check in his bank. He told me that he could not give me the money, as there were some checks outstanding which might be presented at his bank, and he did not care to have his account overdrawn. He, however, gave me a check for $650, and promised me the balance the following morning at his office at 9 o'clock. He presented to me an account showing a balance due me of $284.14, which he admitted to be due me. I went to his office on the 11th of February at the hour indicated, and received there a letter, of which the annexed is a true copy. I at once went to my attorney, Mr. P. M. Brown, and told him that it was my opinion that, as Mr. Todhunter knew I would have to leave the city for the west, to be gone some time, he intended to hold

the money until I was out of the city, when he might take his own time to pay same to me. The total amount received by Mr. Todhunter was $964.14, out of which he was entitled, as per our agreement, in full for fees and commissions, the sum of $20, leaving a balance due me of $294.14. He claims, however, $10 for drawing the papers, whereas it was distinctly understood between us that this item should be included in his commission, and he simply claims to owe me $284.14. I have not withdrawn from his hands the sale of the said property. There was no agreement whatever that I should pay any of the expenses concerning said sale, but that he should be entitled to a commission as soon as such sale was effected. Although Mr. Todhunter is not entitled to said item of $10, I would waive same in case a claim for it would result in my being exposed to the delay of an action at law, and the probability of my being unable to collect from him."

The affidavit of Pierre M. Brown stated that "said Todhunter has admitted to me that there was due from him to said Sardy $284.14, and that he would have paid said sum in a few days if said Sardy had waited; but, since there was to be a fight, he proposed to delay the matters as much as possible."

The following is the affidavit of the respondent, John Todhunter: "John Todhunter, being duly sworn, deposes and says that the relation of attorney and client has never existed between himself and said Arthur L. Sardy, but that the only relations that have ever existed between him and said Sardy have been as follows: Deponent has for about a year or more been engaged in endeavoring as a broker to negotiate the sale of certain unimproved real estate located at Tarrytown Heights, in Westchester county, said real estate belonging to said Sardy; and deponent has been put to considerable expense, and has devoted much time, in and about the same. Meantime said Sardy recently requested deponent to negotiate a loan upon bond secured by mortgage of said property; and accordingly deponent, on or about January 14, 1892, secured a loan of two thousand five hundred dollars ($2,500) upon the same, which said sum, less brokerage, was duly handed over by deponent to said Sardy. That on or about the 27th day of January, said Sardy executed an additional bond and mortgage for $1,000 upon said property in favor of one Jane Arbuthnut, the total amount of said loan being the sum of three thousand five hundred dollars, ($3,500,) and left the said last-mentioned bond and mortgage in the hands of deponent with instructions to deliver the same over to the mortgagee upon deponent's receipt from said mortgagee of the additional one thousand dollars, ($1,000,) the said Sardy stating to deponent at the time that he was going west, but that his son, who resided in or near the city of New York, would call at deponent's office from time to time, in order to ascertain if deponent had received the money, as the mortgagee at the time was confined to the house, and unable to transact business. That from the 27th day of January, 1892, to the 6th day of February, 1892, said Sardy frequently called on deponent at his office to make inquiries as to how the matter was progressing, and on the last day mentioned repeated that he was on that or the following day going to the west, but that his son would call, and that he had given or would give him written authority to receive the money. That on the 8th day of February, 1892, deponent delivered said bond and mortgage to the agent of the mortgagee, and received the sum of nine hundred and sixty four 14-100 dollars, the same being one thousand ($1,000) dollars, less the commissions of the broker, for the mortgagee. Deponent thereupon deposited the check in bank, and repaired to his office, No. 52 Wall street, New York city. Deponent was also in his office during the entire day of February 11th, but neither did said Sardy nor any representative of his call. Upon the following day deponent was so indisposed as to be unable to leave his residence in Tarrytown, he having been in a physician's care for several months. That said Sardy on that day called upon deponent at his house, in order to ascertain how the matter stood, when deponent expressed surprise at seeing him, as deponent believed

that the said Sardy had already gone for the west. Deponent thereupon stated that the loan had been consummated, and that the check had been deposited, but deponent did not know if same had as yet been collected or not. Deponent denies that he said that any checks were outstanding, but deponent did say that, as his check book was at his office, he did not know what his balance was, provided the check so deposited had not been collected. Deponent said, however, that he would let him have the six hundred and fifty dollars ($650) by check, upon his (deponent's) local bank in Tarrytown, which he would cash at once, and that on the following day, if deponent was well enough to go to his office, he would adjust any difference that might exist. Deponent denies that he presented any account to said Sardy. Deponent denies in the most emphatic manner that he admitted to said Sardy that he had used all or any part of the money for his own purposes, as insinuated in Sardy's pretended affidavit, and it was not the fact that deponent converted to his own use any of said money of said Sardy. Upon the following day deponent went to the city, but was obliged to stop off the elevated train in order to attend to a matter which detained him some time, but, in order not to disappoint said Sardy deponent sent him a note, which was written at an elevated station, and therefore a copy of which was not kept by deponent, stating that he could not attend to the matter until the following day, which letter said Sardy states in his moving papers is annexed thereto, but no copy thereof was ever served upon deponent. Deponent at about 12 o'clock on said 11th day of February, 1892, arrived at his office, where he ascertained from his clerk that said Sardy had preceded him, and had acted in a very boisterous and violent manner. Deponent was served with the copy order to show cause, and what said Sardy claimed to be an affidavit, in the afternoon of the same day, which order was dismissed for irregularity. Deponent further says that no demand of any kind was ever made upon him by said Sardy, or by any one in his behalf. Deponent further says that said Sardy never retained deponent in any professional capacity whatever, but that the only employment was that of agent for the negotiation of a sale and mortgage of said Sardy's property. That by reason of said Sardy having resorted to the summary illegal methods of endeavoring to extort moneys from deponent, as this proceeding shows, much of deponent's labor in endeavoring to effect a sale of his property has been frustrated, and much of deponent's time and money have been wasted, and therefore deponent is entitled to commissions as though said sale was actually made by deponent, and that a reasonable sum be obtained, by suit or otherwise, for deponent's time and trouble in advertising said property, and in laboring to dispose of said property to the advantage of said Sardy. That during the time that deponent has had charge of said property he has taken several people to look at the same, and has employed agents to show said property, and several of them have been favorably impressed with said property, and that deponent has heretofore been in strong hopes of selling said property, to the great pecuniary advantage of said Sardy. * * *"

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*Gardner & Brown*, (*Alfred A. Gardner*, of counsel,) for appellant. *John Todhunter*, for respondent.

PER CURIAM. An application was made in this matter to compel the respondent to pay over moneys which, it was alleged, he had received in a professional capacity. It was claimed by the moving party that the respondent was employed by him to sell certain real estate in Westchester county for an agreed commission, and at the total amount for which the property would sell; that the respondent procured a loan to be made upon the property, for which a bond and mortgage were given, and that subsequently, and while acting in a professional capacity, he obtained for the petitioner another loan on the same property for the sum of $1,000, and a mortgage was given for

that amount; that of the $1,000, $650 were paid to the petitioner, and that then the respondent presented an account to the petitioner, showing a balance due of $284.14, which has been demanded, and has not been paid. The respondent, in answer to this petition, claims that he was not acting in a professional capacity at all, but was employed merely as a broker to negotiate the sale of the Westchester property, and, failing that, that he did succeed in raising money upon mortgage for the petitioner; and he denies that any demand was ever made upon him for the balance which it is now insisted he should turn over to the petitioner. The merits of the application were presented to the court below upon the petition of Mr. Sardy, and upon an affidavit of one Brown to the effect that Todhunter had admitted that the money claimed had not been turned over, and upon the answering affidavit of the respondent. Upon these papers the court below denied the motion to compel the respondent to pay over the money referred to in the petition, and held that the moving party should be left to his action at law. This disposition, we think, was proper, and the order should therefore be affirmed, with $10 costs and disbursements.